**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|                                       |   |                          |
|---------------------------------------|---|--------------------------|
|                                       |   | PRISONER                 |
| LEROY MIMS                            | : | CIVIL NO. 3:02cv250(WIG) |
|                                       |   |                          |
|    v.                  | : |                          |
|                                       |   |                          |
| DEPARTMENT OF CORRECTION, ET AL.      | : | MARCH 31, 2005           |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**</u>

     This case is a pro se civil rights action by Leroy Mims, a former incarcerated inmate, presently on supervised parole, complaining about numerous events when he was confined at the Wallens Ridge State Prison (WRSP) in Big Stone Gap, Virginia from his transfer in November 1999 until plaintiff's return to Connecticut DOC custody in August, 2001.   The operative complaint is plaintiff's Amended Complaint filed July 31, 2002. (Doc. #7)  On February 12, 2004, the defendants filed their Answer raising several affirmative defenses. (Doc. # 23). Plaintiff asserts claims for money damages against the defendants John Armstrong, Lynn Milling, and Fred Levesque, alleging failure to remedy certain continuing violations of his civil rights caused by Virginia officials, after having been informed of those conditions.

     Defendants respectfully submit that the Court should enter summary judgment for the defendants because, based on the undisputable material facts, the defendants are entitled to judgment as a matter of law on the following grounds:

    1.     The Plaintiff Has Failed To Allege Any Personal Injury, 42 U.S.C. §1997e(e).

    2.     Plaintiff Has Failed To Exhaust Administrative Grievances to Level 2 and 3

    3.     The Plaintiff Has Failed To Prove Personal Participation Or Responsibility.

4.      The Amended Complaint Fails To State A Claim Upon Which Relief Can Be

Granted.

a.) There Is No Right to be Housed in Any Particular State

b.) There Is No Liberty Interest In Classification

5.      The Statute Of Limitations Bars Certain Claims

6.      The Eleventh Amendment Bars the Claims Against DOC

7.      The Defendants Are Protected By Qualified Immunity.

**<u>FACTS</u>**

The plaintiff is a former incarcerated inmate of the Connecticut Department of Correction (DOC) serving a 7 1/2 year total effective sentence having been  convicted of assault on a police officer, assault 3rd and unlawful restraint, who is presently on supervised parole, having been released to parole supervision on March 17, 2005.  Def. Statement, ¶ 4; Milling aff. ¶4 The defendants John Armstrong, former Commissioner of Correction, Lynn Milling, Interstate Compact Supervisor, and Fred Levesque, Director of Classification and Population Management, were, at all times referenced in the Amended Complaint, supervising administrators based in Connecticut.  Def. Statement, paras. 2-4.

By document dated October 12, 1999, Connecticut entered into a contract with the Virginia Department of Correction to house certain Connecticut inmates in Virginia.  Under the contract, and in practice, the prisons were under the direction and control of the Virginia Department of Correction, not Connecticut.  Def. Statement, para; Milling aff.¶3.  The plaintiff was transferred to WRSP on November 9, 1999,  and he was housed there until August 6, 2001..  Def. Statement, ¶4; Milling aff. ¶4.   During the time plaintiff was at WRSP, that facility was

inspected by the Commission on Accreditation for Correction and found to meet constitutionally accepted standard for the treatment of inmates.  Def. Statement, ¶5; Milling aff. ¶5. Exhibit C.

During the times referenced in plaintiff's complaint, the Directives of the Connecticut Department of Correction provided that inmates could file grievances to remedy complaints about prison conditions and problems.  Any grievance filed in Virginia by a Connecticut inmate concerning Connecticut or a Connecticut official would be forwarded to the Interstate Compact Office.  Any grievances filed in Virginia by an inmate concerning Virginia or a Virginia official would remain in Virginia and be handled by Virginia grievance officials.  If a Connecticut inmate was dissatisfied with the handling of his grievance in Virginia, he could file a grievance in Connecticut after exhausting the Virginia remedies.  Def. Statement, ¶¶7-8; Milling aff.¶¶7, 8. A number of  completed Level 1 custody-related grievances were filed by plaintiff and were forwarded to Connecticut concerning plaintiff's Virginia confinement, but they did not concern alleged misconduct by the Connecticut defendants in the Amended Complaint.  Each complaint was appropriately referred, and investigated, and responses were provided to plaintiff. Def. Statement, ¶22; Milling aff.¶ 22, and Exhibits R & S attached thereto. Mr. Mims did not exhaust his administrative grievance remedy as he did not appeal any grievances to level 2 or Level 3. Def. Stmt. ¶ 23;  Milling aff. ¶ 23.

The defendants Armstrong, Milling and Levesque were based in Connecticut and did not witness any of the events in the of which plaintiff complains, except as noted in their affidavits. Def. Statement, ¶16.  The CT DOC provided a staff person in WRSP to be an on-site monitor whose duties included discussing issues concerning Connecticut inmates with Virginia officials, and   investigating complaints submitted to Connecticut officials by Connecticut inmates at WRSP. See exhibits R & S to Milling affidavit. Except as noted in the moving affidavits, the on-

site monitors did not personally witness any of the events complained of, and their knowledge is based on information in records collected by or for them after the fact.  Def. Statement, paras. 1, 3, 22, and exhibits attached to MA.

During his confinement at WRSP, plaintiff complained, in writing, frequently and in voluminous detail about many things. Exhibits R & S. The on-site monitor would investigate his complaints whenever they were referred to them or brought to their attention, and they would try to remedy any problems.  Def. Statement, para. 22, Exhibit R & S.. The plaintiff's allegations of staff misconduct were unsubstantiated although each was looked into with great detail, and none were ignored.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar response setting forth specific facts showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate.  Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988).  In other words, there must be "sufficient

evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth. See Gottlieb v. County of Orange, 84 F.3d. 511, 518 (2nd Cir. 1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879, F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42 U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

Recently Judge Hall, in Reid v. Armstrong, 3:03CV208(JCH)(HBF)Ruling Re: Cross Motions for Summary Judgment (D.Conn. March 29, 2005)(Hall, J.), articulated in more detail the summary judgment standard, in granting defendants' motion for summary judgment. A copy of that Ruling is attached, and controls and disposes of plaintiff's classification claims which are made in this case. Judge Hall stated in part, with regard to the summary judgment standard, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991). A motion for summary judgment cannot be defeated "merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted). Summary judgment should be granted in this case for the reasons stated recently by Judge Hall in the Reid v. Armstrong ruling. Attachment A.

**ARGUMENT**

**I. PLAINTIFF'S CLAIMS FOR DAMAGES ARE BARRED BY 42 U.S.C.§1997e(e)**

Under §1997e(e) , "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by §1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)) (alteration in original). (dismissing a prisoner's section 1983 action on the basis that a bruised ear lasting for three days was de minimis and could not serve as the requisite physical injury needed for a claim for emotional suffering); Wright v. Miller, 973 F. Supp. 390, 396 (S.D.N.Y. 1997) (holding that prisoners could not recover damages for mental anguish under the PLRA). See Cox v. Malone, 199 F. Supp. 2d 135 (S.D.N.Y. 2002) aff'd 56 Fed. App'x. 43, 2003 U.S. App. LEXIS 3008 (2d Cir. 2003)(citing Siglar with approval, and noting that §1997e(e) was intended to deter frivolous prisoner lawsuits seeking damages).

In this action, plaintiff does not allege any physical injury whatsoever. Verbal abuse, verbal threats or harassment are insufficient to form a basis for a §1983 action. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir 1985); accord, Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir 1986); Haskin v. Jones, Civ. No. 3:00CV997(WWE)(HBF)(D.Conn. April 3, 2002)(other citations omitted).

In Lamb v. Bumpus, 52 Fed. Appx. 740; 2002 U.S. App. LEXIS 25836 (6th Cir 2002), a prisoner, like the plaintiff here, alleged that he was verbally abused or threatened. The district court dismissed, relying on §1997e(e) and the Sixth Circuit affirmed noting that the District court properly dismissed as frivolous a prisoner's §1983 complaint with respect to a

jail sergeant because the prisoner, at most, alleged that the jail sergeant was verbally abusive toward him. In <u>Jones v. H.H.C. Inc.</u>  2003 U.S. Dist. LEXIS 6510 (S.D.N.Y. 2003) the Southern District Court of New York noted that courts have strictly construed the physical injury requirement of §1997e(e), barring claims by prisoners who demonstrate solely emotional or mental injury and barring  physical injury  claims where the injury alleged is de minimis."   <u>Porter v. Coombe</u>, 1999 U.S. Dist. LEXIS 11924, 1999 WL 587896, at *2 (S.D.N.Y. Aug. 4, 1999). In <u>Jones</u>, a Muslim inmate alleged that he had been served pork in violation of his first amendment right to a diet consistent with his Muslim religion. He further alleged that the pork caused him to suffer from high blood pressure. The court rejected the high blood pressure claim, and reasoned  that high blood pressure fails to state a cognizable claim for physical injury. Instead, the court  in <u>Jones</u> recognized that  although Jones claimed that he had suffered psychological damage, and that the porcine Heparin elevated his blood pressure, these consequences of the defendants' conduct, even if established, <u>are clearly insufficient to meet the " physical injury " threshold.</u> See   <u>Alonzo v. Squyres</u>, 2002 U.S. Dist. LEXIS 14935, 2002 WL 1880736 (N.D. Cal. Aug. 9, 2002)(emphasis added)(plaintiff taken to hospital for high blood pressure, brought on by "gruesome psychological harassment[]," has not suffered a prior  physical  injury) . Cf.   <u>Pinkston-Bey v. DeTella</u>, 1997 U.S. Dist. LEXIS 3969, 1997 WL 158343, at *3 (N.D. Ill. Mar. 31, 1997)(severe headaches are not  physical injury) .

Here, plaintiff has alleged no injury as a result of  having been transferred to WRSP. Plaintiff does not allege that he suffered any harm as a result of either the verbal harassment or the alleged denial of a fair due process hearing in connection with his classification to chronic discipline. Furthermore, the  amended complaint, filed in July 2002, does not include any

allegations that defendants caused plaintiff any physical injury.  Consequently, this Court is bound under 42 U.S.C. §1997e(e)  to dismiss plaintiff's damages claims in the Amended Complaint for failure to state a claim.

## II THE PLAINTIFF FAILED TO EXHAUST HIS  ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), requires an inmate to exhaust his administrative remedies before bringing a § 1983 action with respect to prison conditions.  Booth v. Churner, 572 U.S. 731 (2001).  Connecticut has such an administrative remedy in Department of Correction Administrative Directive § 9.6 (Inmate Grievances).  See Directive, Def. Statement, para. 6, 7, 8 23; Exhibits D, E, F, R and T.  The term "action … with respect to prison conditions" is not defined in § 1997e.  However, the term has been judicially determined to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  The PLRA requires that the inmate exhaust all available remedies, including appeals, before suit can be filed.  Booth v. Churner, supra at 735; Poer v. Miles, 2000 U.S. LEXIS 20620 (W.D. Tex. 2000); Berry v. City of New York, 2002 U.S. Dist. LEXIS 10520 (S.D.N.Y. 2002); Gentry v. Maxwell, 2002 U.S. App. LEXIS 9637 (6th Cir. 2002); Howard v. Sherfield, 2002 U.S. App. LEXIS 22962; Shugart v. Fleming, 2002 U.S. LEXIS 1611 (N.D. Tex. 2002); Flath v. Chavez, 2001 U.S. App. LEXIS 18125 (6th Cir. 2001); Alvarez v. United States, 2000 U.S. Dist. LEXIS 6079 (S.D.N.Y. 2000); Tripp v. Carter, 1999 U.S. LEXIS 16487 (N.D. Ill. 1999); McCrew v. Calvo, 2002 U.S. Dist. LEXIS 5900 (N.D. Cal. 2002); Hernandez-Salazar v. FMC Jail Unit, 2002 U.S. Dist. LEXIS 1169 (N.D. Tex. 2002); Thaddeus-X v. Williams, 2000 U.S. App. LEXIS 9664 (6th Cir. 2000); Utley v. Hiatte, 2000

U.S. App. LEXIS 5255 (6th Cir. 2000); Boyd v. Dept. of Correction, 2000 U.S. LEXIS 10806 (E.D. Pa. 2000); Reyes v. Punzal, 206 F. Supp. 2d 431 (W.D.N.Y. 2002).

In the instant case, the plaintiff failed to appeal any level one grievance denial to the next level and failed to exhaust available grievance procedures because he did not appeal to Level 2. Def. Statement, para. 23. Exhibit T; ) Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002) (affirming a district court's dismissal of prisoner's complaint for failure to exhaust where the inmate had filed a "level one grievance," but had not pursued the available remedy of filing a " level two  grievance"). In Gibson, the Second Circuit affirmed the dismissal entered by Judge Garfinkel in Hanton v. Grotta. Hanton had complained of the cell condition in a "level one grievance" sent to the Bridgeport Correctional Facility, which elicited no response. However, he had not pursued the available remedy of filing a "level two grievance," which is available when there is no response to a "level one grievance." See Conn. Dept. of Corrections Admin. Directive 9.6(16), available at http://www.doc.state.ct.us/ad/ch9/ad9-6.pdf., Exhibit D. Gibson v. Goord, 280 F.3d 221, 223; (2nd Cir. 2002).

Plaintiff certainly corresponded prolifically, although there is no allegation he ever wrote to Commissioner Armstrong or Mr. Levesque.  However, letter writing does not satisfy the exhaustion requirement.  Mukhtaar v. Commissioner Armstrong, No. 3:01CV1084 (Ruling, February 4, 2003), Attachment B.  Accordingly, this Amended Complaint should be dismissed in its entirely for failure to exhaust administrative remedies.

III.     **THE PLAINTIFF HAS FAILED TO PROVE PERSONAL INVOLVEMENT**

In this circuit, personal involvement of the defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert.

denied, 434 U.S. 1087 (1978); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987);

Black v. United States, 534 F.2d 524, 527 (2d Cir. 1976). Supervisory responsibility alone is not

enough to confer exposure to liability. Williams v. Smith, 781 F.2d 313, 323 (2d Cir. 1986);

Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974). "A plaintiff must thus allege a tangible

connection between the acts of the defendants and the injuries suffered." Bass v. Jackson, 790

F.2d 260, 263 (2d Cir. 1986).

    In the instant case, the defendant Armstrong is mentioned only in paragraph six, page

three, where plaintiff alleges that the defendants "conspired" to send him to a prison in Virginia.

This transfer, as explained below, violates no constitutional rights. The defendant Milling is the

Interstate Compact Administrator and she responded to plaintiff's issues.    The defendant

Levesque is mentioned only in Connecticut with placement in Administrative Segregation. Such

placement, as explained herein, does not implicate any liberty interest . All plaintiff's claims

should be dismissed against these defendants for failure to allege and prove personal

participation or responsibility.  Also, as the following arguments should demonstrate, the

defendants did not participate in wrongdoing or learn of any unconstitutional conduct within

their control.  To the contrary, they asked for information with regard  all of his concerns

whenever they became aware of them, and they learned that plaintiff's claims were unfounded.

Def. Statement,  ¶¶22, 24. They were not in charge of Virginia prisons and could not dictate the

practices there.  Def. Statement, ¶3..   They cannot be held liable therefore.  See, e.g., Saia v.

Manson, No. H-77-163 (D. Conn. 1977), Attached hereto, Attachment C.

    It is true that Rule 8(s), F.R.Civ.P., broadly governs pleadings in federal court, and that

notice pleading normally requires only a "short plain statement" of a claim for relief.  See

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168,

113 S. Ct. 1160, 122 L.Ed.2d 517 (1993); Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Also, it has been stated that, "Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusion." Koch v. Yunich, 533 F.2d 80, 85 (2d Cir. 1976); see, e.g., Powell v. Jervis, 460 F.2d 551, 553 (2d Cir. 1976); Louis v. Ward, 444 F. Supp. 1107, 1109 (S.D.N.Y. 1978); see also, Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994). The Amended Complaint in this case fails to state a claim upon which relief can be granted. The United States Court of Appeals has consistently refused to impose § 1983 liability upon defendants where the causal connection between their conduct and the constitutional injury is remote rather than direct. Taylor v. Brentwood Union Free School District, 143 F.3d 679 (2d Cir. 1999). A defendant cannot be held liable where they did not proximately cause plaintiff's injuries. Id. The Connecticut defendants did not proximately cause plaintiff's injuries. While in Virginia, the prison in which plaintiff was confined was under the direction and control of the Virginia Department of Correction, not Connecticut. Def. Statement, para. 17. Nor is this a case where defendants failed to remedy any continuing violation of plaintiff's rights over which they had some control. To the contrary, in every example, they were either unaware of any problems, despite vigilance, or they helped correct any problems, or plaintiff's claims are simply false. The claims against each defendant are discussed seriatim:

### John Armstrong

The allegations against John Armstrong, former Commissioner of Correction, focus generally on the fact that Connecticut inmates were transferred to Virginia to relieve overcrowding. This is clearly a legitimate penological objective, to safely reduce prison

crowding and thereby improve safety and security. See <u>Turner v. Safley.</u>, 482 U.S. 78 (1987). Plaintiff also asserts that certain VADOC officials or staff were racists and subjected plaintiff to racially discriminatory treatment.  It is clear that this could not form the basis for any claim of wrongdoing by Commissioner Armstrong because plaintiff has alleged only verbal harassment and no physical injury, and Commissioner Armstrong had no ability to issue staff discipline to VA DOC staff. See <u>Saia v. Manson</u>, attached..  Moreover, as this Court has frequently ruled, plaintiff has no grounds for complaint about his transfer. See e.g. <u>Sadler v. Rowland</u>, 3:01CV1786 (CFD)(WIG), Ruling on Motion to Dismiss, (D.Conn. Sept. 13, 2004). A prisoner has no constitutional right to be incarcerated in a particular institution; he may be transferred for any reason.   <u>Sadler,</u> Ruling on Motion to Dismiss, Sept. 13, 2004 at p. 9 <u>citing</u> <u>Meachum v. Fano</u>, 427 U.S. 215 (1976) and <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983).

**<u>Fred Levesque</u>**

Fred Levesque is the Director of Classification and Population Management. He approved plaintiff for placement into Administrative Segregation, which is a classification decision. This occurred in 1997, prior to the statute of limitations in this case. See Exhibit __ to MA. Under Connecticut General Statute § 52-577, the applicable statute of limitations for a §1983 action is three years from the point of accrual. Conn. Gen. Stat. § 52-577; <u>Lounsbury v. Jeffries,</u> 25 F.3d 131, 134 (2d Cir. 1994). Mr. Levesque is not personally involved in the day to day operations of the Interstate Compact Office. Indeed, his only involvement in this case is due to his position, and to the fact that he approved plaintiff's placement in AS, which as argued herein does not raise a claim implicating a liberty interest.

Mr. Mims does not allege in his complaint that he notified Levesque of his complaints regarding conditions of confinement and has provided no evidence suggesting that Levesque was

aware of his complaints. Levesque was not referenced on any of the communications provided by defendants regarding reports of the investigations into plaintiff's claims, and thus both levesque and Armstrong lack the requisite personal involvement. See <u>Jefferson v. Armstrong</u>, 3:01Cv1575 (JCH)(D.Conn. July 26, 2004).

### <u>Lynn Milling</u>

In the Amended Complaint, plaintiff alleged that defendant Milling, Interstate Compact Supervisor based in Connecticut, was awre of the racist, hostile environment in WRSP. He filed several level one grievances which were referred to the Interstate Office. Plaintiff's complaints were not ignored. Major Milling had the complaints investigated but the investigations found no corroboration or substantiation and the on-site monitors assisted in this review. See Exhibit R to MA. Moreover, plaintiff's complaint does not state a claim.

Plaintiff's facts do not state a claim. There is no allegation nor proof of deliberate indifference to a serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 109 (1976). Verbal abuse, verbal threats or harassment are insufficient to form a basis for a §1983 action. See <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir 1985); accord, <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir 1986); <u>Haskin v. Jones</u>, Civ. No. 3:00CV997(WWE)(HBF)(D.Conn. April 3, 2002)(other citations omitted).

Here, plaintiff supplies no facts in the Amended Complaint from which racial motivation for his alleged problems may be found or inferred against the Connecticut defendants. <u>See Smith v. Walsh</u>, 519 F. Supp. 853, 856-57 (D. Conn. 1981) (holding that the complaint must allege racial or class-based animus behind the conspiracy). Because plaintiff fails to provide a factual basis for a conspiracy claim, his so-called "conspiracy" claims should be dismissed. <u>See</u> 28

U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted); <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

**IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

 **A.    There Is No Liberty Interest Implicated By The Transfer Or Plaintiff's Classification To Chronic Discipline Or Administrative Segregation**

It is well-settled that, a lawfully convicted and incarcerated prisoner has a restricted range of protected liberty interests. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 546-47 (1979) (constitutional rights of inmates are subject to reasonable limitation or restriction in light of legitimate concerns regarding the safety or security of the correctional institution); <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976) (every change in a condition of confinement that has a substantial adverse impact on a prisoner is not entitled to protection under the Due Process Clause). The plaintiff bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir. 1996). If the plaintiff is unable to show the existence of a protected interest, **the claim must be dismissed regardless of whether the defendants acted in accordance with the requisite procedures.** See id. at 317-18. (emphasis added); see also <u>Reid v. Armstrong</u>, 3:03CV208(JCH)(D.Conn. March 29, 2005), slip op at 8. (attached)

The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications. <u>Moody v. Daggett</u>, 429 U.S. 78, 99 n.9 (1976). Similarly, where state prison officials are given full discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification. See <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1207 (8th Cir. 1990) (no

due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner).

In Connecticut, the Commissioner of Correction is "responsible for establishing disciplinary, diagnostic, classification, treatment, vocational . . . services and programs throughout the[D]epartment [of Correction]." Conn. Gen. Stat. § 18-81. Thus, under state law, the State of Connecticut Department of Correction has full discretion to make inmate classification decisions. This district has previously held that the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action because there is no liberty interest in a particular prison classification. See Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, No. 98-3707 (Aug. 20, 1999) (summary order). In Green, the district court noted that the state courts have found no state-created liberty interest in proper classification. Id. at 10

> The United States Supreme Court made clear in 1976 in Moody v. Daggett, that:
>
> **[N]o due process protections were required upon the *discretionary* transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate.  *The same is true of prisoner classification and eligibility for rehabilitative programs*. . . . and petitioner has no legitimate or statutory or constitutional entitlement sufficient to invoke due process.**

429 U.S. at 88, n. 9, 97 S. Ct. at 270 n. 9 (emphasis added); see also Meachum v. Fano, 427 U.S. at 224-25.  The Connecticut Supreme Court has likewise stated unambiguously and admitting no exception:  "Prison classification and eligibility for various rehabilitation programs, wherein prison officials have full discretion to control those conditions of confinement, *do not create a statutory or constitutional entitlement sufficient to invoke due process."*   Wheway v. Warden,

215 Conn. 418, 431 (1990), *citing* Moody, *supra, and* Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

This precedent was recently reaffirmed by the United States Supreme Court in the context of sex offender treatment.  In McKune v. Lile, 536 U.S. 24, 122 S.Ct.  2017, 153 L.Ed.2d 47 (2002),  the Court upheld the validity of Kansas' sex offender treatment program against a challenge that the program violated an inmate's Fifth Amendment right against self-incrimination.  As part of the Kansas sex offender treatment program, participating inmates were required to complete a sexual history form detailing all prior sexual activity including uncharged criminal offenses.  *Id.* at 30, 122 S.Ct. at 2023.   The form was not confidential, and release of information on the form and subsequent prosecution for the uncharged offenses was a possibility. *Id.*  If the inmate refused to participate, his classification level was changed, and he was subject to the following:

> [His] visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to personal television, and other privileges *automatically* would be curtailed.  In addition, [the inmate] would be transferred to a maximum-security unit, where his movement would be more limited, he would be moved from a two-person to a four-person cell, and he would be in a potentially more dangerous environment.

*Id.* at 30-31, 122 S.Ct. at 2023 (emphasis added).

In rejecting the inmate's Fifth Amendment challenge, the Supreme Court stated that not only did the circumstances described above fail to comprise a Fifth Amendment claim but that they failed to even constitute a liberty interest sufficient to invoke due process.  *Id.* at 37-42, 122 S.Ct. at 2026-30.  In so ruling, the Supreme Court, as the ultimate authority on constitutional issues, noted that its own decision in Sandin v. Conner dictates the standard to be applied in determining when a liberty interest sufficient to invoke due process exists in a deprivation

alleged with regard to challenged prison conditions.  *Id.* at 37, 122 S. Ct. at 2026.  "[T]he Court held in *Sandin* that  challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardships on inmates in relation to the ordinary incidents of prison life.'"  *Id.*, *quoting* <u>Sandin v. Conner,</u> 515 U.S. 472, 484 (1995).

Applying the <u>Sandin</u> analysis for when and if a liberty interest exists to the question of Fifth Amendment compulsion, the Supreme Court stated in <u>McKune</u> that, "The <u>Sandin</u> framework provides a reasonable means of assessing whether the  response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *Id.* at 41, 122 S.Ct. at 2029.  In finding that the change in classification in *McKune* did not constitute a liberty interest under its decision in *Sandin*, the Supreme Court reasoned as follows:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. . . . ***To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life.***  . . . ***It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.  The Court has considered the proposition that a prisoner in a more comfortable facility might begin to feel entitled to remain there throughout his term of incarceration.  The Court has concluded, nevertheless, that this expectation "is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.*** . . .
>
> ***Respondent also complains that he will be demoted from Level III status to Level I status as a result of his decision not to participate.  This demotion means the loss of his personal television, less access to prison organizations and the gym area; a reduction in certain pay opportunities and canteen privileges, and restricted visitation rights.  . . .  The Constitution accords prison officials wide latitude to bestow or revoke these prerequisites as they see fit.  Accordingly,*** <u>***Hewitt v. Helms,***</u> ***459 U.S. 460, 467 (1983) held that inmate's transfer to another facility did not in itself implicate a liberty interest, even though that transfer resulted in the loss of "access to vocational, educational, recreational and rehabilitative programs."***

*Id.* at 39-40, 122 S.Ct. at 2027-28 (emphasis added). Clearly, there is no liberty interest in classification decisions which impact an inmate's access to certain correctional facilities or to certain programming. That the Connecticut Department of Correction's classification system included review for transfer to WRSP as an extension of the Chronic Discipline or Administrative segregation program, and such a transfer does not implicate a liberty interest sufficient to invoke due process in a classification decision.

 *Sandin* reiterated that the Due Process Clause itself does not create a liberty interest in being free from 'every change in the conditions of confinement having a substantial adverse impact on the prisoner" or from transfers from cell to cell within a prison, so long as conditions remain "within the normal limits or range of custody which the conviction has authorized the State to impose." 515 U. S. at 478.

While the plaintiff takes issue with the classification process, his ultimate classification during the time frame at issue in the Amended Complaint was certainly not unexpected, and it is well "within the normal limits or range of custody". *Sandin* makes clear that, if this is the case, it is not for the courts to delve into the decision-making process that leads to the acceptable, constitutional result. Indeed, far more adverse circumstances are held to invoke no liberty interest, and thus no procedural due process protections. Administrative segregation is considered to fall within the "normal range of custody." Sher v. Coughlin, 739 F.2d 77, 80-81 (2d Cir. 1984). It is also settled that inter-prison transfers fall within that range, Meachum v. Fano, 427 U.S. at 224-25, as do inter-state transfers. Olim v. Wakinekona, 461 U.S. 238 (1983).

## V. THE STATUTE OF LIMITATIONS BARS CERTAIN CLAIMS

The plaintiff begins his complaint by making allegations concerning events in 1995. The Complaint in this case was first filed on February 11, 2002. Thus, any and all claims prior to

February 11, 1999 are barred by the statute of limitations. Under Connecticut General Statute § 52-577, the applicable statute of limitations for a §1983 action is three years from the point of accrual. Conn. Gen. Stat. § 52-577; <u>Lounsbury  v. Jeffries,</u> 25 F.3d 131, 134 (2d Cir. 1994).

### VI. THE DEPARTMENT OF CORRECTION IS NOT A PERSON UNDER §1983

The first named defendant in this case is the Department of Correction. The plaintiff's claims against a state agency are in effect against the state and are barred by the Eleventh Amendment. Although a civil rights action may be brought under 42 U.S.C. § 1983 against a "person" acting under color of state law, state officials sued in their official capacities have Eleventh Amendment immunity from suit, and hence are not considered "persons" within the meaning of § 1983, see <u>Howlett v. Rose,</u> 496 U.S. 356, 365, 110 L. Ed. 2d 332, 110 S. Ct. 2430(1990); <u>Will  v.  Michigan Department of State Police ,</u> 491 U.S. 58, 71,105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989).<u>Will</u> holds that state agencies are immune from suit under the Eleventh amendment for § 1983 claims. Mr. Mims sued the DOC, a governmental entity, which is considered an  arm of the State for Eleventh Amendment purposes. See <u>Will,</u> 491 U.S. at 70. Thus, the claims against the DOC must be dismissed.

### VII. THE DEFENDANTS ARE PROTECTED BY  QUALIFIED IMMUNITY

The defendants, by virtue of their status as public officials who must be allowed to do their job in good faith without fear of being sued each time they make a decision on behalf of the State, are clothed with qualified immunity in § 1983 actions.  <u>Harlow v. Fitzgerald</u>, 457 U.s. 800, 868, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

Qualified immunity shields a defendant sued in his individual capacity "from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitution rights of which a reasonable person would have known," <u>Harlow</u>, <u>supra</u>, at 818, or even where

rights were clearly established, if it was objectively reasonable for him to believe that his acts did

not clearly violate those rights.  See Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034,

97 L.Ed.2d 523 (1987); Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir. 1993); Robinson v. Via, 821

F.2d 913, 921 (2d Cir. 1987).   In order to determine whether a particular right was clearly

established at the time a defendant acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity";
> (2) whether the decisional law of the Supreme Court and the applicable circuit
> court support the existence of the right in question; and (3) whether under
> preexisting law a reasonable defendant official would have understood that his or
> her acts were unlawful.

Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1991); see also,

Benitez v. Wolff, 985 F.2d 662, 666 (2d Cir. 1993).

Such immunity will attach unless the contours of the right were sufficiently clear that a

reasonable official would understand that what she was doing violated that right, and the test is

to be applied with reference to the particular facts alleged in the case.  Anderson, supra at 640;

Lewis v. Cowen, 165 F.3d 154, 167 (2d Cir. 1999); Mozzochi v. Borden, 959 F.2d 1174, 1178

(2d Cir. 1992).

In the instant case, there is no credible evidence that any of the defendants acted outside

of their qualified immunity.  None of the defendants failed to act after receiving notice of

plaintiff's complaints and there is no evidence showing that any investigation which found

plaintiff's complaints to be without merit, were conducted improperly.  In such circumstances,

qualified immunity is appropriate.  See, e.g., Jefferson v. Armstrong, No. 3:01CV1575 (JCH)

(Ruling, July 26, 2004), Attachment D.

In Jefferson, the Court granted qualified immunity to Milling and Armstrong,  concludes

that, in the absence of any evidence supporting Jefferson's allegations, Milling and Armstrong

acted reasonably when they relied on the results of investigations conducted on-site and took no

further action. Thus, Armstrong and Milling are protected by qualified immunity. Defendants'

motion for summary judgment should be granted as to Armstrong, Levesque, and Milling on this

ground, in addition to the reasons stated above.

## CONCLUSION

For all of the foregoing reasons, we urge the Court to render summary judgment in favor

of the defendants.

DEFENDANTS
Department of Correction, et.al

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    ___/s/_____
Steven R. Strom
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct01211
E-Mail:  steven.strom@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 31st day

of  March, 2005:

Leroy Mims
93 Sequin Street
Hartford, CT 06106

___/s/_____
Steven R. Strom
Assistant Attorney General