UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEROY MIMS | : | CIVIL NO. 3:02CV250 (WIG) |
| v. | : | |
| DEPARTMENT OF CORRECTION, et. al. | : | MARCH 31, 2005 |

### DEFENDANTS' LOCAL RULE 56(a) STATEMENT

1.  Lynn Milling is employed by the State of Connecticut, as a Major in the Department of Correction, and I am the Interstate Compact Supervisor for the Department. This is a supervisory and administrative position based in Connecticut. She was not present at and did not witness any of the events that plaintiff alleges occurred in Virginia, except as noted herein. She has been employed by the Department of Correction since 1980. Milling Affidavit (MA) ¶1.

2.  By contract first dated October 12, 1999, pursuant to Conn. Gen. Stat. § 18-86b and the Interstate Corrections Compact, Conn. Gen. Stat. §§ 18-105 to 18-107, the Connecticut Department of Correction entered into a contract with Virginia Department of Correction permitting the housing of certain Connecticut inmates in Virginia facilities. See Contract, Exhibit A. MA ¶2.

3.  Under the contract, the day-to-day responsibility for the administration of the Virginia facilities remained within the discretion and control of Virginia officials. Contract, Art. 2. Connecticut DOC officials retained the right to inspect, at reasonable times, the facilities for compliance with the contract and were permitted to place one or more full time liaison or contract monitors in Virginia. Contract, Art. 17. MA,¶3

4. The plaintiff, Leroy Mims, # 93506, is serving a total effective sentence of 7 ½ years for assault on a police officer, assault 3rd degree, and unlawful restraint. He was transferred to the Wallens Ridge State Prison (WRSP) in Big Stone Gap, Virginia on November 9, 1999 and he was housed there until August 6, 2001 when he was returned to Connecticut. See Movement Records, Exhibit B. At all times that plaintiff was in Virginia, WRSP was under the authority and control of the Virginia Department of Correction, not the Connecticut Department of Correction. MA ¶4.

5. During the time period that plaintiff was at WRSP that facility was inspected by the Commission on Accreditation for Corrections and found to meet constitutionally accepted standards for the treatment of inmates. See Accreditation Report, Exhibit C. MA, ¶5.

6. During this time period, Lynn Milling was assigned to the Virginia project and, with others, she helped to identify inmates to be transferred to Virginia, to prepare the necessary paperwork and operations to effect the transfer, and then the ongoing monitoring of the Connecticut inmates in Virginia, and she was a liaison between Connecticut and the Connecticut inmates in Virginia and involved in the processing of grievances filed in Connecticut. MA, ¶6.

7. With regard to grievances, the Directives of the Department of Correction provide that inmates can file grievances to remedy complaints about prison conditions and problems. A copy of the Directives in effect during the times alleged in the Amended Complaint are attached to Lynn Milling's affidavit in Exhibit D. MA ¶7

8. Any grievance filed in Virginia by a Connecticut inmate concerning Connecticut or a Connecticut official would be forwarded to the Interstate Office. Any grievances filed in Virginia by a Connecticut inmate concerning Virginia or a Virginia official would remain in

Virginia and be handled by Virginia grievance officials. If a Connecticut inmate was dissatisfied with the handling of his grievance in Virginia, he could file a grievance in Connecticut after exhausting the Virginia remedies. See Handbook, Grievance Procedure, Exhibit E, Instructions, Exhibit F. MA, ¶8

9. At the request of the Office of the Attorney General, Milling read plaintiff's Amended Complaint of July 31, 2002, and she reviewed the records of the Department of Correction concerning the plaintiff at WRSP collected by or for her for this case to determine an appropriate factual response with respect to the custody issues and events alleged in his Amended Complaint against the Connecticut defendants. MA ¶9

10. Inmate Leroy Mims alleges his classification to restrictive housing status was inappropriate, and violated his constitutional right to a fair and adequate hearing. He additionally claims his Administrative Segregation status resulted in a subsequent facility placement that restricted his freedom and subjected him to cruel and unusual punishment. Inmate Mims' specific complaints date back to 1997, and are addressed individually below and in Lynn Milling's affidavit, and attachments thereto, in the chronological order cited in his submitted statement of facts. Because Mims is arguing that each reassignment to AS status upon every new incarceration was unconstitutional, documentation regarding each such assignment is attached to the MA as Exhibits and organized according to periods of incarceration. MA ¶10

11. Inmate Mims was assigned to the Chronic Discipline Unit on 7/31/96, Exhibit G, following receipt of six disciplinary convictions in a 180 day period. Following incidents of threats toward other inmates and staff, the Classification Committee at the Walker Reception and Special Management Unit determined him to be a threat to inmates and staff, and recommended

his reclassification to Administrative Segregation (AS) status. A transfer to Northern CI to be reviewed for Administrative Segregation was approved on 1/02/97 by Director of Classification & Population Management Fred Levesque, and on 1/02/97, Inmate Mims was transferred to Northern. MA ¶11

12. Mims was held on Administrative Detention pending an Administrative Segregation hearing, in accordance with Administrative Directive 9.4. Exhibit H. He participated in a 1/24/97 classification hearing and was officially assigned to AS status on 1/28/97. Exhibit I. MA ¶12.

13. Inmate Mims was afforded hearings weekly, documented on Inmate Classification History Forms, dated from 2/7/97 to 3/20/97. Exhibit J. He discharged his sentence and was released from custody on 5/29/97, still on AS status. He did not complete requirements of the Phase Program, which is mandatory prior to consideration for return to General Population. Additionally, he received a DR for Threats on 3/07/97. MA ¶13

14. Although Inmate Mims alleges he was deprived of his right to a fair and adequate hearing, all documentation indicates that such hearings were conducted in accordance with CTDOC Administrative Directives and with Inmate Mims' knowledge and/or participation. MA¶14

15. Inmate Mims was readmitted to Department of Correction on 11/28/97, to the Hartford Correctional Center. In accordance with the 1997 classification manual, "An inmate who was discharged or paroled from Administrative Segregation, Close Custody, or Protective Custody shall be readmitted in that status and reviewed within 15 days of readmission for the appropriateness of continuation in that status" (Attached, Exhibit K). On December 2, 1997

Mims was transferred to Northern CI and was reclassified to AS status on 12/23/97 (Exhibit L). He was approved for progression to Phase II of the AS program on 3/25/98, but did not finish, due to his 5/29/98 discharge. MA ¶15

16.    Inmate Mims was again readmitted to the Department of Correction, on 6/25/98, to Hartford CC. Exhibit B. After receiving a disciplinary report for Insulting Language on 6/29/98, he was transferred to Northern CI for return to AS status. He did not complete the Phase Program, as he discharged on 7/24/98. Exhibit M. MA ¶16

17.    Inmate Mims was again readmitted to the Department of Correction, on 8/07/98, to Hartford CC. Exhibit B. He was transferred to Northern CI for return to AS status on 8/14/98, and was classified to AS on 8/17/98. Exhibit N. MA ¶17

18.    From 8/14/98 to 11/9/99, Inmate Mims was housed in the AS Unit at Northern, failing to complete the Phase Program and accumulating seven more disciplinary convictions, including Threats (3), Interfering with Safety and Security (2), Security Tampering and Assault on Staff. Exhibit O. For this reason, he was not eligible for reclassification from Level 5 status. MA ¶18.

19.    Inmate Mims was transferred to Wallens Ridge State Prison on 11/09/99, while still in Phase I of the Administrative Segregation Program. He had failed to progress through the program due to receipt of multiple serious disciplinary reports. Exhibit P. Although Inmate Mims contends his transfer to Virginia failed to allow him to progress through the AS program, he continued to receive disciplinary reports during his time at Wallens Ridge. Additionally, inmates were advised in memos dated March 2000, August 2000 and October 2000 that their time in Virginia did count toward progression in the AS program. Exhibit Q. MA ¶19.

20.     On November 7, 2000, a regular review and AS phase review were completed and it was determined that Mr. Mims was not appropriate for return to Connecticut based on his poor disciplinary history in Virginia. Plaintiff received a total of four disciplinary reports in Virginia in that time period. The Disciplinary Reports (DR's) that Mr. Mims received are listed as Threats (12/12/99), Assault on a DOC employee (1/10/00), Insulting Language or Behavior (2/22/00), and Assault (11/05/00). MA ¶20.

21.     On February 12, 2001 a second regular review and AS phase review was completed and plaintiff was not returned to Connecticut at that time based on an Insulting Language or Behavior DR (2/19/01). Plaintiff's next regular review was scheduled for July 2001. If plaintiff remained disciplinary free for 90 days he was to be considered for return to Connecticut. Plaintiff was returned to Connecticut on August 6, 2001. Plaintiff eventually progressed through the phase program was transferred to Osborn CI, and was released to supervised parole on March 17, 2005. MA ¶21.

22.     Inmate Mims' allegations regarding abuse and staff misconduct at Wallens Ridge have been addressed repeatedly through inmate requests, complaints and grievances, all documented in the attached Exhibits R & S. None of plaintiff's claims of abuse or harassment were substantiated. None of plaintiff's allegations were ignored, but rather a considerable amount of time and effort was spent reviewing and responding to each allegation. MA ¶22

23.     Although Mr. Mims filed 12 Level One grievances, based on a review of the grievance logs maintained at the Interstate Office, Mr. Mims did not file a Level Two grievance with the Interstate Compact Office. Exhibit T. MA ¶23.

24.     Inmate Mims' placement on AS status upon each new admission to DOC was a classification judgment  per Administrative Directive and classification guidelines. For safety and security reasons,  inmates were readmitted and classified on the same status as when they discharged.  Notable in Inmate Mims' case is that the time elapsed between incarcerations ranged from less than three weeks to less than eight months. Placement on AS status was not for punishment reasons but rather for the safety and security of staff, and to maintain good institutional order.  Plaintiff's failure to progress through the phase program quickly, both before and while he had been transferred to Virginia, was due to his own behavior, which was periodically reviewed and evaluated,  and indicates that his claims have no merit. MA ¶24

          DEFENDANT
          Department of Correction, et. al.

          RICHARD BLUMENTHAL
          ATTORNEY GENERAL

BY:    __/s/_____
       Steven R. Strom
       Assistant Attorney General
       110 Sherman Street
       Hartford, CT  06105
       Federal Bar #ct01211
       E-Mail:  steven.strom@po.state.ct.us
       Tel.: (860) 808-5450
       Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 31st day of March, 2005:

Leroy Mims
93 Sequin Street
Hartford, CT 06106

                                                        /s/
                                             Steven R. Strom
                                             Assistant Attorney General