```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
```

```
LEROY MIMS,                           :

     Plaintiff,                       :

          v.                          : No. 3:02CV250(WIG)

DEPARTMENT OF CORRECTIONS,            :
JOHN J. ARMSTRONG,
FREDERICK LEVESQUE,                   :
and LYNN MILLING,
                                      :
     Defendants.
-------------------------------X
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 34]

On March 31, 2005, Defendants filed their Motion for Summary Judgment, Memorandum in Support, Statement of Material Facts [Doc. # 35], and Supporting Affidavits [Doc. # 36]. Additionally, as required by the Local Rules of this Court, Defendants served a Notice to Pro Se Litigant [Doc. # 37], advising Plaintiff that his claims could be dismissed if he did not file opposition papers as required by Rule 56, Fed. R. Civ. P., and the Local Rules of this Court.  Copies of these rules were attached to the Notice.  The Notice further advised Plaintiff as to what papers he must file in order to oppose the summary judgment motion and the deadlines for filing such papers. When opposition papers were not received, on June 9, 2005, this Court issued another Notice to Pro Se Litigant, giving Plaintiff an additional 21 days to file opposition papers and reiterating that, thereafter, the Court would rule on the motion for summary

judgment whether or not such opposition papers had been received. To date, no opposition papers have been received.

Therefore, in accordance with <u>Vermont Teddy Bear, Inc. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004), the Court considers Defendants' Motion for Summary Judgment to determine whether they have fulfilled their burden of demonstrating the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law.

## Background

Plaintiff, a formerly incarcerated inmate, presently on supervised parole, filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, complaining about various alleged violations of his constitutional rights in connection with his chronic discipline and administrative segregation hearing and his transfer in 1999 from Northern Correctional Institute ("NCI") in Somers, Connecticut, to Wallens Ridge State Prison ("WRSP") in Big Stone Gap, Virginia.  Defendants in this case are the Connecticut Department of Correction ("Connecticut DOC"), John Armstrong, the former Commissioner of Correction, Lynn Milling, the Interstate Compact Supervisor, and Fred Levesque, the Director of Classification and Population Management.

More specifically, Plaintiff alleges that his chronic discipline and administrative segregation hearing was unconstitutional and that prison official Defendant Levesque and

Commissioner Armstrong violated his due process right to a fair and adequate hearing before a disinterested hearing committee. He further alleges that his continued confinement in administrative segregation upon his readmissions to NCI, after having discharged his prior sentence, subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights. Plaintiff alleges that Connecticut DOC officials, Commissioner Armstrong, Mr. Levesque, and Ms. Milling, conspired to violate his constitutional rights by transferring him in 1999 to an administrative segregation unit at WRSP in Virginia, where they knew or should have know that he would be subjected to a racially hostile environment and denied programs, treatment, and the ability to earn his way back into the general population.  (Pl.'s Am. Civil Rights Comp. dtd. 7/31/02.)

    According to the affidavits and exhibits produced by Defendants in support of their summary judgment motion, Plaintiff Mims was serving a sentence of seven and one-half years at various Connecticut DOC locations for assault on a police officer, third degree assault, and unlawful restraint.  On July 31, 1996, he was assigned to the chronic discipline unit at MacDougall Correctional Institution following his receipt of six disciplinary convictions in a 180-day period.  (Defs.' Ex. G.) Because of threats to inmates and staff, on January 28, 1997, following a classification hearing, Plaintiff was reclassified to

administrative segregation status and was transferred to NCI. (Defs.' Ex. I.)  Thereafter, Plaintiff was afforded weekly hearings.  (Defs.' Ex. J.)  On April 14, 1997, while still assigned to administrative segregation, Plaintiff discharged his sentence and was released from DOC custody.  (Def.'s Ex. B.)  However, at the time he was released, he had not completed the Phase Program, which is a mandatory prerequisite for returning to the general prison population.  (Milling Aff. ¶ 13.)

On November 28, 1997, Plaintiff was readmitted to Hartford Correctional Center and was reassigned to administrative segregation until he completed the Phase Program. (Milling Aff. ¶ 15; Defs.' Ex. L.)  He was discharged on May 29, 1998, still without having completed the Phase Program.  (Milling Aff. ¶ 16.)  He was again readmitted to Hartford Correctional Center on June 25, 1998, and was transferred to NCI and placed in administrative segregation until his discharge on July 24, 1998.  (Milling Aff. ¶ 16; Defs.' Ex. M.)  Again, on August 7, 1998, Plaintiff was readmitted to Hartford Correctional Center and transferred to NCI for a return to administrative segregation status, where he remained until November 9, 1999, accumulating seven more disciplinary convictions.  (Milling Aff. ¶¶ 17, 18.)

On October 12, 1999, in order to alleviate overcrowding in the Connecticut prisons, Connecticut DOC entered into a contract with the Virginia DOC to house certain Connecticut inmates in

4

Virginia.  (Defs.' Ex. A.)  Under the contract and in practice, the prisons were under the direction and control of Virginia DOC, not Connecticut DOC.  (Def. St. ¶ 3; Milling Aff. ¶ 3.) Plaintiff was transferred to WRSP on November 9, 1999, and was housed there until August 6, 2001.  (Def. St. ¶ 4; Milling Aff. ¶ 4.)  While at WRSP, Plaintiff continued to receive disciplinary reports and, thus, he could not progress through the Phase Program. (Milling Aff. ¶¶ 4, 19, 20.)  Once Plaintiff remained disciplinary free for 90 days, he was eligible to be returned to Connecticut DOC.  On August 6, 2001, Plaintiff was returned to Connecticut DOC custody.   (Milling Aff. ¶ 21.)

During the period referenced in Plaintiff's complaint, the Directives of the Connecticut DOC provided that inmates could file grievances about prison conditions and problems.  (Defs.' Ex. D.)  Any grievance filed in Virginia by a Connecticut inmate would be forwarded to the Interstate Compact Office and then forwarded on to Connecticut DOC if it concerned Connecticut or a Connecticut official.  (Defs.' Ex. E.)  If it concerned Virginia or a Virginia official, it would be retained in Virginia. Additionally, after exhausting his Virginia remedies, a Connecticut inmate could file a grievance in Connecticut.  (Def. St. ¶¶ 7,8; Milling Aff. ¶¶ 7,8; Defs.' Ex. E.)

While Plaintiff was at WRSP, he filed twelve Level I grievances, but never pursued these to the Level II or III stage.

Defendants state that each grievance was investigated and responses were provided to Plaintiff. (Def. St. ¶ 22; Milling Aff. ¶ 22.) Plaintiff never appealed the denials of any of these grievances. (Def. St. ¶ 23; Milling Aff. ¶ 23.)

Following his transfer, while still incarcerated, on February 11, 2002, Plaintiff filed the present civil rights action against the Connecticut DOC, Armstrong, Levesque, and Milling, alleging that violations of his Fourteenth and Eighth Amendment rights.

Defendants have now moved for summary judgment on the grounds, <u>inter alia</u>, that Plaintiff failed to exhaust his administrative remedies; certain of Plaintiff's claims are barred by the statute of limitations; his claims against the Connecticut DOC and state officials sued in their official capacities are barred by sovereign immunity; and Plaintiff's complaint fails to state a claim upon which relief may be granted.

## **Discussion**

### **I.  Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(the "PLRA"), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this

provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court. Porter v. Nussle, 534 U.S. 516, 532 (2002). This requirement has been applied to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id.

In the instant case, the record reveals that, although Plaintiff filed numerous grievances, he failed to appeal the denial of any of these grievances beyond level one and, thus, failed to exhaust available administrative remedies as required by the PLRA before filing this suit. Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002) (affirming the district court's dismissal of a prisoner's complaint for failure to exhaust where he had filed a level one grievance but had not pursued available grievance procedures because he did not appeal to level two). Accordingly, Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.

## II.  Statute of Limitations Bar

Additionally, many of Plaintiff's claims are barred by the three-year statute of limitations, Conn. Gen. Stat. § 52-577, applicable to § 1983 actions.[1] Lounsbury v. Jeffries, 25 F.3d

---

[1] Section 52-577, Conn. Gen. Stat., provides:

> No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

131, 134 (2d Cir. 1994). Plaintiff's complaint was filed on February 11, 2002.[2] Many of his claims relate to events that took place between 1996 and his transfer to WRSP in November 1999. Clearly, any claims relating to events that transpired prior to 1999 would be time-barred, including his claims that he was denied due process with respect to his administrative segregation hearings that took place prior to 1999.

### III. Sovereign Immunity

Additionally, certain of Plaintiff's claims against Defendants must be dismissed based on their sovereign immunity from suit in federal court for money damages. The first named Defendant in Plaintiff's complaint is the Connecticut DOC. Plaintiff's claims against a state agency are in essence claims against the State and, to the extent that he seeks money damages,

---

While state law supplies the limitations period for § 1983 actions, federal law dictates when the claim accrues. Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the harm." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (internal quotation marks omitted). A plaintiff's ignorance of an injury does not toll the running of the statute of limitations if, with the exercise of reasonable diligence, the plaintiff could have learned of the wrong prior to the date of actual discovery. Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998) (citing Keating v. Carey, 706 F.2d 377, 382 (2d Cir. 1983)).

[2] Because Plaintiff was incarcerated at the time he filed his complaint, the operative date is actually the date upon which he delivered his complaint to prison officials for filing with the Court, which would have been several days prior to February 11, 2002. See Walker, 159 F.3d at 119. The exact date is irrelevant for purposes of this ruling.

they are barred by the Eleventh Amendment.  <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974) (holding that states have historically enjoyed an immunity from suit in federal court "seeking to impose a liability which must be paid from public funds in the state treasury").  Likewise, state officials acting in their official capacities have immunity from suit.  <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989).  However, Plaintiff may seek injunctive and declaratory relief against the individual defendants in their official capacities because "official-capacity actions for prospective relief are not treated as actions against the State."  <u>Id.</u> at 71, n. 10 (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, n. 14 (1985)).

Therefore, Plaintiff's claims for money damages against the Connecticut DOC and the individual Defendants, to the extent they are sued in their official capacities, are dismissed.

**IV.  Failure to State a Claim**

Plaintiff's substantive claims fall into three relatively broad categories: (1) that his transfer to WRSP violated his due process rights; (2) that the prison conditions in Virginia violated his Eighth Amendment rights; and (3) that his continued confinement in administrative segregation upon readmission to NCI and after transfer to WRSP violated his due process and Eighth Amendment rights.  Defendants argue that the undisputed facts of record establish that they are entitled to judgment as a matter

9

of law on each of these claims.

**A.  Plaintiff's Transfer**

It is well-settled that a lawfully convicted and incarcerated prisoner has a restricted range of protected liberty interests.  Bell v. Wolfish, 441 U.S. 520, 546-47 (1979).  In order to state a claim for denial of procedural due process, a prisoner must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest.  Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996).  To determine the existence of a protected liberty interest, a two-part test is applied.  First, the prisoner must establish that the confinement, restraint, or condition complained of created an "atypical and significant hardship ... in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Second, he must establish that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint."  Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

An interstate prison transfer, in and of itself, does not deprive an inmate of any liberty interest protected by the Due Process Clause.  Olim v. Wakinekona, 461 U.S. 238, 250 (1983); Vitek v. Jones, 445 U.S. 480, 489 (1980).  Just as an inmate has no justifiable expectation that he will be incarcerated in any

10

particular prison within a State so as to implicate due process considerations when an <u>intrastate</u> prison transfer is made, see <u>Meachum v. Fano</u>, 427 U.S. 215, 224-26 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242-43 (1976), similarly, an inmate has no justifiable expectation that he will not be transferred to another state. "For any number of reasons, a State may lack prison facilities capable of appropriate correctional programs for all offenders." <u>Olim</u>, 461 at 245. "Statutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other states." <u>Id.</u> Confinement in another state is within the normal limits or range of custody which convictions authorize the transferring state to impose. <u>Id.</u> at 250 (internal citations and quotation marks omitted).

In the present case, Plaintiff's transfer was pursuant to a contract between Connecticut DOC and Virginia DOC to relieve overcrowding, a legitimate penological objective. See <u>Turner v. Safley</u>, 482 U.S. 78 (1987). Plaintiff does not allege that his transfer was in retaliation for the exercise of constitutionally protected rights or for any other impermissible reason. Rather, he alleges that Defendants conspired to transfer him to WRSP in Virginia, where they knew that he would be subjected to less favorable conditions of confinement, including a racially hostile environment, and failed to intervene after he was transferred. Plaintiff has failed to allege the deprivation of a protected

liberty interest.  His transfer to Virginia following his conviction and sentencing in Connecticut state court does not in itself form the basis for a Fourteenth Amendment due process challenge.

### B. Prison Conditions

Plaintiff contends that he was deprived of a protected liberty interest when he was transferred to WRSP where there was a racially hostile environment and where the general prison conditions, including his exercise, shower and telephone conditions, were less agreeable than those at NCI.

"That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to an institution with more severe rules."  Meachum, 427 U.S. at 225.

Nor does Plaintiff have an Eighth Amendment claim concerning the conditions of WRSP.  The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain" or that are "grossly disproportionate to the severity of the crime warranting imprisonment."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  "To prevail on a claim based on the conditions of his confinement, a prisoner must show extreme deprivations, because routine discomfort is part of the penalty that criminal offenders pay for

12

their offenses against society. " Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (internal citations and quotation marks omitted). An institution fulfills its Eighth Amendment obligations if it provides inmates with "adequate food, clothing, shelter, sanitation, medical care and personal safety". Id.

With respect to Plaintiff's complaints that Defendants conspired to transfer him to WRSP knowing of the racially hostile environment that existed at the prison, Plaintiff has failed to state a claim under either the Eighth Amendment or Due Process Clause. In order to state a § 1983 under the Eighth and Fourteenth Amendments, a prisoner must show that prison officials acted with "deliberate indifference" to the threat of serious harm or injury by another person. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Plaintiff has not alleged either deliberate indifference on the part of any Defendant or a threat of serious harm or injury by another person. His conclusory allegations that he suffered from a racially-hostile environment at WRSP do not set forth an actionable claim under either the Eighth or Fourteenth Amendment.

Thus, with respect to Plaintiff's complaints about prison conditions at WRSP, the Court finds that Plaintiff has failed to identify any objectively serious risks to inmate health, housing or safety, let alone a culpable mental state on the part of prison officials. See Farmer v. Brennan, 511 U.S. 825, 837

13

(1994). Plaintiff has failed to raise a triable issue of fact that he was subjected to conditions at WRSP amounting to "extreme deprivations," sufficient to set forth a claim under § 1983 for a violation of his rights under the Eighth Amendment or the Due Process Clause. See Sims, 230 F.3d at 21.

### C. Release into General Prison Population

Plaintiff's remaining constitutional challenges pertain to his continued confinement in administrative segregation and the failure of Defendants to have him released into the general prison population both at NCI and WRSP. As discussed above, to the extent these claims hinge on the denial of due process in connection with the hearings he was afforded prior to 1999, they are barred by the three-year statute of limitations.

In Connecticut, state prison officials are given full discretion to determine inmate classifications. Conn. Gen. Stat. § 18-81. This Court has previously held that the improper classification of inmates in the custody of the Connecticut DOC does not give rise to an actionable claim under § 1983 because they have no liberty interest in a particular prison classification. See Green v. Armstrong, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D. Conn. Feb. 25, 1998), aff'd, No. 98-3707 (2d Cir. Aug. 20, 1999)(summary order); see also Wheway v. Warden, 215 Conn. 418, 431 (1990)(holding that prison classifications and eligibility for various rehabilitation

14

programs do not create a statutory or constitutional entitlement sufficient to invoke due process, where the prison officials have full discretion to control those conditions of confinement).

In support of their summary judgment motion, Defendants have provided evidence that the procedural requirements and Administrative Regulations were followed with respect to Plaintiff's retention in administrative segregation both before and after his transfer.  Prior to his transfer, Plaintiff had been serving time in an administrative segregation unit for violating institutional rules.  His placement was a classification judgment of the DOC.  (Milling Aff. ¶ 24.)  For safety and security reasons, upon readmission, he was classified at the same status as when he was discharged.  (Id.)  Due to his repeated disciplinary convictions, Plaintiff was unable to complete the Phase Program, which was necessary for his return to the general prison population, and upon transfer to WRSP, his status remained the same.

The Due Process Clause does not create "an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." Hewitt v. Helms, 459 U.S. 460, 466-67 (1983).  Moreover, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point" because it is necessarily employed "to protect [a] prisoner's

safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer." Id.; Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993). The record shows establishes that Plaintiff's placement in administrative segregation was pursuant to DOC Administrative Directives and classification guidelines. No liberty interest of Plaintiff was implicated.

Accordingly, the Court finds that Plaintiff's complaint fails to set forth a claim upon which relief may be granted and that Defendants are entitled to summary judgment as a matter of law.

## **Conclusion**

For the reasons set forth above, the Court grants Defendants' Motion for Summary Judgment [Doc. # 34]. The Clerk is directed to enter judgment accordingly and to close this case.

SO ORDERED, this    28th    day of September, 2005, at Bridgeport, Connecticut.

                                                    /s/ *William I. Garfinkel*
                                                  WILLIAM I. GARFINKEL,
                                                  United States Magistrate Judge